FILED & ENTERED

JAN 25 2023

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Cetulio    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Maria Estela San Vicente<br><br><br><br>                                   Debtor(s). | CHAPTER 11<br><br>Case No.:  1:19-bk-11935-MT<br>Adv No:   1:19-ap-01130-MT |
| Rosa Saucedo<br><br>                                   Plaintiff(s),<br>   v.<br><br>Maria Estela San Vicente, Sergio San Vicente<br><br><br><br>                                   Defendant(s). | **MEMORANDUM OF DECISION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br><br>Date:           January 18, 2023<br>Time:           1:00 p.m.<br>Courtroom:   302 (via ZoomGov.com) |

Maria San Vicente ("Maria" or "Debtor") filed a Chapter 13 on July 31, 2019. Thereafter, the case was converted to Chapter 11 on October 2, 2019. Debtor had filed five previous cases and her husband, licensed real estate agent Sergio San Vicente ("Sergio[1]"), filed four previous cases between August 2010 and April 2017.

---

[1] In order to distinguish between Maria and Sergio San Vicente, they are sometimes referred to by their first names for greater clarity and ease. No disrespect is intended.

-1-

Procedural Background for Plaintiff Rosa Saucedo's Action:

Prior to Debtor having filed this chapter 11, on November 28, 2016, Plaintiff Rosa Saucedo ("R. Saucedo") filed her original complaint in Los Angeles Superior Court against Sergio, d.b.a. San Vi Management, as well as several other defendants, asserting causes of action for fraud and breach of fiduciary duty, among others, in relation to a home loan modification scheme. Rosa Saucedo v. San Vicente, et al., LASC no. LC104925 (the "R. Saucedo Action"), RJN ISO MSJ, Ex. 2, int. p. 2. R. Saucedo filed adversary case 1:19-ap-01130-MT on October 30, 2019, asserting claims of nondischargeability under §§ 523(a)(2) and (a)(4) based on the same Superior Court proceeding (the "R. Saucedo Adversary").

Procedural Background for Plaintiff Maria Saucedo's Action:

On April 19, 2018, prior to Debtor having filed this chapter 11, Plaintiff Maria Saucedo ("M. Saucedo") filed her original complaint in Los Angeles Superior Court against Sergio, d.b.a. San Vi Management, as well as several other defendants, asserting causes of action for fraud and breach of fiduciary duty, among others, in relation to a scheme to obtain title to her home free and clear. Maria Saucedo v. San Vicente, LASC no. LC107140 (the "M. Saucedo Action"), RJN ISO MSJ, Ex. 2, int. p. 3-4.

M. Saucedo filed adversary case 1:19-ap-00123-MT on October 15, 2019, against Debtor and Sergio, asserting claims of nondischargeability under §§ 523(a)(2) and (a)(4) based on a Superior Court proceeding against Sergio (the "M. Saucedo Adversary").

Bankruptcy Proceedings

On May 8, 2020, Debtor filed her Chapter 11 Disclosure Statement and Plan of Reorganization. The disclosure statement did not list either R. Saucedo or M. Saucedo as unsecured creditors or provide any treatment for their claims and does not disclose one of the adversaries. See bankr. ECF doc. 80 and 81.

On November 20, 2020, the Court granted unopposed motions for relief from the automatic stay, filed by R. Saucedo and M. Saucedo (collectively, "Plaintiffs") to proceed with the pending state actions against Sergio.

On February 17, 2022, Los Angeles Superior Court Judge Keeny issued her Proposed Statement of Decision in the R. Saucedo Action, which became the final statement of decision under Cal. Rule of Court 1.1590, et seq.  19-ap-01130, RJN ISO MSJ, Ex. 2.  The Superior Court found that Sergio committed fraud and violated Cal. Civ. Code § 2945.  Judgment in favor of R. Saucedo and against Sergio was entered on August 16, 2022, in the amount of $95,000.  Attorney's fees in the amount of $29,350 and costs of $910.17 were also awarded.  Id. at Ex. 1.

On February 17, 2022, Los Angeles Superior Court Judge Keeny also issued her Proposed Statement of Decision in the M. Saucedo Action, which became the final statement of decision under Cal. Rule of Court 1.1590, et seq.  19-AP-01123, RJN ISO MSJ, Ex. 2.  The Superior Court found that Sergio committed fraud and violated Cal. Civ. Code § 2945.  Judgment in favor of M. Saucedo and against Sergio was entered on May 2, 2022, in the amount of $95,000.  Attorney's fees in the amount of $36,000 and costs of $1,127.17 were also awarded.  Id. at Ex. 1.  The two judgments entered against Sergio are referred to here as the "Judgment Debts."

Debtor then filed an amended plan and disclosure statement on November 4, 2020.  See bankr. ECF doc. Bankr. ECF doc. 103 and 104.  On January 20, 2021, the Amended Chapter 11 plan was confirmed.  Id. at ECF doc. 144.  On November 29, 202, the chapter 11 case was closed on an interim basis.  Id. at ECF doc. 167.

//
//

## STANDARDS

### Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a); see also FRBP 7056. The moving party must show that a fact cannot be disputed by citing to "materials in the record, including depositions documents, electronically stored information, affidavits or declarations, stipulations… or other materials…" FRCP 56(c)(1)(A).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts that show a genuine issue for trial. Id. at 324. The nonmoving party must show more than "the mere existence of *some* alleged factual dispute… the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The court must view the evidence in the light most favorable to the nonmoving party. Tolan v. Cotton, 572 U.S. 650, 656-57 (2014). Summary judgment must not be granted if "a reasonable juror, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." James River Ins. Co. v. Hebert Schenk, P.C., 523 F.3d 915, 920 (9th Cir. 2008). However, the evidence offered by the parties must be believable. See Scott v. Harris, 550 U.S. 372, 380-81 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Id.

//
//

**Community Property Discharge under 11 U.S.C. 524**

Section 524(a)(3) contains two exceptions to the community property discharge. First, the community property discharge does not apply to a community claim that has been excepted from discharge under §§ 523, 1228(a)(1), or 1328(a)(1). Second, the community property discharge does not apply if the bankruptcy court determines that the claim would be excepted from discharge in a hypothetical case filed by Debtor's spouse on the same petition date. Section 524(b) also contains two exceptions based on the conduct of a non-debtor spouse. Section 524(b)(1) provides that the community property discharge does not apply if the non-debtor spouse files a bankruptcy case within six years of the debtor's petition and is denied a discharge. And § 524(b)(2) states that the community property discharge does not apply if the bankruptcy court determines that it would not grant a discharge to the non-debtor spouse in a hypothetical case filed on the same petition date.

**DISCUSSION**

**The Judgment Debt is Community Debt**

All claims against a marital community are discharged "except a community claim that is exempted from discharge under[, *inter alia*,] section 523." In re Soderling, 998 F.2d 730, 733 (9th Cir. 1993); 11 U.S.C. § 524(a)(3). A "community claim" is defined as any "claim that arose before the commencement of the case concerning the debtor for which property of the kind specified in section 541(a)(2)[**5**] of this title is liable, whether or not there is any such property at the time of the commencement of the case." 11 U.S.C. § 101(7). The Ninth Circuit in Soderling provided this broader explanation:

> Unlike a claim, a "community claim" is a debt owed by the debtor *or the debtor's spouse,* which under state law could have been satisfied from community property that would have passed to the debtor's bankruptcy estate, whether or not such property existed at the commencement of the case. Thus, three criteria must be met before an obligation has the status of a community claim: (1) it must be a debt owed by one of the spouses; (2) it must be satisfiable from community property under applicable state law; and (3) the community property from which the debt could be satisfied under

state law must be included within the assets which would pass to the debtor's bankruptcy estate, whether or not such assets exist at the commencement of the case.

In re Soderling, 998 F.2d at 733, quoting *Community Property and the Bankruptcy Reform Act of 1978,* Alan Pedlar, 11 St. Mary's L.J. 349, 351-52 (1979). The bottom line is that "whether or not a creditor holds a community claim will be determined by state law." Id.

Maria and Sergio lived as a married couple in California during and immediately after the filing of the Chapter 11 petition. Under California law, the community is liable for debt incurred by either spouse, the community estate is liable for a debt incurred by either spouse before or during marriage, regardless of which spouse has the management and control of the property and regardless of whether one or both spouses are parties to the debt or to a judgment for the debt. Cal. Fam.Code § 910. Defendant concedes this is a community debt. Defendant's Supplemental Brief in Opposition, ad. ECF doc. 37, 2:20-21.

**The Judgment Debt is Nondischargeable in a Hypothetical Case filed by Sergio**

To state a claim for relief from the community property discharge, where the purported fraudulent conduct is by a non-debtor spouse, a creditor must: (1) allege the existence of a community debt; and (2) allege sufficient facts to support a hypothetical claim of nondischargeability or denial of discharge against the non-debtor spouse as of the petition date. In re Lockhart-Johnson, 631 B.R. 38 (B.A.P. 9th Cir. 2021). On April 22, 2020, Sergio filed motion in Superior Court to vacate the default judgment due to Maria's bankruptcy. There was no bankruptcy by Sergio filed or pending at that time – his previous cases had been dismissed. It is not clear why[2] but the Superior

---

[2] No copy of the motion to vacate was provided. Both Sergio and Maria each filed bankruptcy so many times, it is hard to tell what was pending at the time of the original default judgment. In any case, another judgment was obtained by each Plaintiff. The delays and costs imposed on Plaintiffs in reaching this stage have been extensive due to multiple bankruptcies.

-6-

Court agreed default judgement was void and then held a trial after this Court granted relief from stay, and thereafter entered a new judgment against Sergio. Maria was not named in that action. There has been no nondischargeability ruling as against Sergio as he has not filed bankruptcy since the Superior Court judgment was entered. Because Maria has filed bankruptcy, the dischargeability as against community property must be considered in her case. Sergio has been named in the complaint and has been given notice of all proceedings. He has not responded.

Issue Preclusion

Issue preclusion, or collateral estoppel, applies in discharge exception proceedings under §523(a). Grogan v. Garner, 498 U.S. 279, 284 n.11 (1991). Pursuant to 28 U.S.C. §1738, as a matter of full faith and credit, federal courts are required to apply the pertinent state's collateral estoppel principles. Gayden v. Nourbakhsh (In re Nourbakhsh), 67 F.3d 798, 800 (9th Cir. 1995). Under California law, collateral estoppel applies only if (1) the issue sought to be precluded from relitigation is identical to that decided in the former proceeding; (2) the issue was actually litigated in the former proceeding; (3) the issue was necessarily decided in the former proceeding; (4) the decision in the former proceeding was final and on the merits; and (5) the party against whom preclusion is sought is the same, or in privity with, the party to the former proceeding. Harmon v. Kobrin, (In re Harmon), 250 F.3d 1240, 1245 (9th Cir. 2001). M. Saucedo filed a Motion for Summary Judgment in adversary 1:19-ap-01123-MT, while R. Saucedo filed a Motion for Summary Judgment in adversary 1:19-ap-01130-MT. Each Motion was supported by a copy of the Superior Court's findings as to the individual plaintiff. While some of the findings of fact overlap both adversary cases, for the purposes of the issue preclusion requirement of finding that the parties are the same, the Court applies only the factual findings that were made as to the specific Plaintiff to ensure that fact preclusion is applied only to the same party named in the Superior Court case.

Lastly, in the Ninth Circuit, the Court must also find that giving the previous judgment preclusive effect would further the public policies underlying the collateral estoppel doctrine. The California Supreme Court has identified three policies underlying the doctrine of collateral estoppel: "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation." Baldwin v. Kilpatrick (In re Baldwin), 249 F.3d 912, 919-920 (9th Cir. 2001).

*Fraud under § 523(a)(2)(A)*

Section 523(a)(2)(A) excepts from discharge any debt "to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. §523(a)(2)(A).

The Ninth Circuit has held that a creditor's claim of nondischargeability based on Section 523(a)(2)(A) must satisfy five elements: (1) the debtor made false statement or deceptive conduct; (2) the debtor knew the representation to be false; (3) the debtor made the representation with the intent to deceive the creditor; (4) the creditor justifiably relied on the representation; and (5) the creditor sustained damage resulting from its reliance on the debtor's representation. In re Slyman, 234 F.3d 1081, 1085 (9th Cir. 2000).

As to R. Saucedo, the Superior Court findings establish that Sergio intentionally misled her by telling her that he would save her house from foreclosure by getting a loan modification and get her title to the house. that he made these statements in order to obtain compensation from her, that when he made these statements, he had no intention of doing anything other than delay foreclosure, that R. Saucedo relied to her detriment on these promises, and that she suffered economic damages of $45,000 as a result. R. Saucedo Adversary, RJN ISO MSJ, Ex. 2, 3:10-20; 7:16-21; 7:27-28. The Superior Court found R. Saucedo's reliance on Sergio was justifiable because she

testified that she trusted him, as he was the real estate agent that had sold her the house originally and she considered him a friend, Id. at 4:5-7; 24-26, and the Superior Court specifically considered in part the betrayal of that trust when awarding emotional distress damages of $50,000. Id. at 8:1-2. The Superior Court found that Sergio's explanations were not credible. Id. at 7:21.

As to M. Saucedo, the Superior Court findings establish that Sergio intentionally misled her by telling her that he would get her title to her home free and clear by creating a trust, transferring title of the Saticoy property to the newly-created trust, and then making M. Saucedo a "trustee" of that trust. M. Saucedo Adversary, RJN ISO MSJ, Ex. 2, 3:7-16; 6:28-7:1. The Superior Court found that Sergio made these statements to obtain compensation from her of $1,000 per month for his "services," that when he made these statements, he had no intention of doing anything other than delay foreclosure, that M. Saucedo relied to her detriment on these promises, and that she was damaged as a result. Id., Ex. 2, 7:2-16. The Superior Court found M. Saucedo's reliance on Sergio was justifiable because she was unsophisticated and his status as a real estate agent and friend lent credibility to his statements. Id. at 4:16-18. The Superior Court specifically considered M. Saucedo's "vulnerable and unsophisticated" status when awarding emotional distress damages of $50,000. Id. at 7:12-13; 18-20. The Superior Court explained that Sergio used his status as a real estate agent and translator, as well as the fact that R. Saucedo was "very unsophisticated" to mislead her with these false representations to pay her money to Sergio (over $1000 per month) for years, while Sergio did nothing to preserve her equity in the property or obtain better terms from the lender, or even the benefits of a short sale. Id. 7:3-5. The Superior Court found that Sergio's explanations were not credible. Id. at 7:5.

All of the elements of issue preclusion have been met by the findings made by the Superior Court. The facts support a finding here that giving the previous judgment

preclusive effect would further the public policy by preservation of the integrity of the judicial system in respecting the findings of a state court, as well as promoting judicial economy and protecting Plaintiffs from having to relitigate these matters here.

There is no genuine dispute as to any material fact. R. Saucedo and M. Saucedo are entitled to judgment as a matter of law. Summary judgment is appropriate under 11 U.S.C. §523(a)(2)(A).

*Fraud or Defalcation While Acting in a Fiduciary Capacity under § 523(a)(4)*

Section 523(a)(4) provides that:
(a) A discharge under § 727 . . . . does not discharge an individual debtor from any debt --

. . . .

(4) for fraud or defalcation while acting in a fiduciary capacity . . . .

The meaning of "fiduciary" in § 523(a)(4) is an issue of federal law. See In re Woosley, 117 B.R. 524, 529 (B.A.P. 9th Cir. 1990). The broad, general definition of fiduciary -- a relationship involving confidence, trust and good faith -- is inapplicable in the dischargeability context. Id., internal citations omitted. The trust giving rise to the fiduciary relationship must be imposed prior to any wrongdoing; the debtor must have been a "trustee" before the wrong and without reference to it. Id., citing Davis v. Aetna Acceptance Co., 293 U.S. 328, 333 (1934). These requirements eliminate constructive, resulting or implied trusts. Id., citing Runnion v. Pedrazzini (In re Pedrazzini), 644 F.2d 756, 758 (9th Cir. 1981).

Although the concept of fiduciary is to be narrowly defined as a matter of federal law, state law is to be consulted to determine when a trust in this strict sense exists. Ragsdale v. Haller, 780 F.2d 794, 796 (9th Cir. 1986), citing In re Pedrazzini, 644 F.2d at 758.

Civil Code 2945 and 2945.4 makes it per se illegal for a foreclosure consultant-- that is, a person who solicits or represents that for a fee he/she can help stop or postpone a foreclosure sale--to engage in any of the following practices:

> 1) collecting or even charging compensation before performing each and every service that he/she agreed to perform on behalf of the homeowner;
>
> 2) charging or collecting excessive fees for services;
>
> 3) taking a lien on the property, requiring any other security as collateral for compensation, or taking any interest in the property (for example, buying the property from the owner so that he/she can allegedly "rent it back")
>
> 4) taking money or property from a third party in connection with the services that the consultant has agreed to perform for the homeowner without fully disclosing that the third-party involvement to the homeowner;
>
> 5) taking a power of attorney from the homeowner ( a "power of attorney" is a document that authorizes someone to act on another person's behalf in a legal or business matter); or
>
> 6) inducing or attempting to induce the owner into signing an illegal contract (that is, one that doesn't comport with all statutory rules and regulations).

See California Civil Code 2945.4.

Courts in the Ninth Circuit have previously held that real estate license carries with it fiduciary obligations to his principals under California law when carrying out licensed activities. See Ragsdale v. Haller, 780 F.2d 794, 796 (9th Cir. 1986); In re Woosley, 117 B.R. 524, 529 (B.A.P. 9th Cir. 1990). The Bankruptcy Appellate Panel for the Ninth Circuit ("BAP") explained that, with respect to licensed activities, real estate licensees have the same obligations as trustees under California law, including duties to refrain from making misrepresentations or obtaining any advantage over their principals, and to make the fullest disclosure of all material facts concerning the transaction that might affect their principal's decision. In re Woosley, 117 B.R. 524, 529 (B.A.P. 9th Cir.

1990)(internal citations omitted).  The BAP explained that, under California law, licensed activities include "solicit[ing] borrowers or lenders for or negotiat[ing] loans or collect[ing] payments or perform[ing] services for borrowers or lenders or note owners in connection with loans secured directly or collaterally by liens on real property…". Cal. Bus. & Prof. Code § 10131(d).

The BAP later distinguished Woosley in Evans v. Pollard (In re Evans), 161 B.R. 474 (B.A.P. 9th Cir. 1993), questioning whether a real estate broker's general fiduciary obligations of undivided service and loyalty in the absence of an identifiable trust *res* are sufficient to establish fiduciary capacity for purposes of § 523(a)(4). In re Evans, 161 B.R. at 477.  There, the BAP held that general fiduciary obligations are not sufficient to fulfill the fiduciary capacity requirement of § 523(a)(4) in the absence of an express, technical or statutory trust, and an identifiable trust *res*. Id. at 478.

The BAP more recently called this line of reasoning into question, in Honkanen v. Hopper (In re Honkanen), 446 B.R. 373 (B.A.P. 9th Cir. 2011), noting that neither the Ninth Circuit nor the BAP provided any reasoning for not considering, in addition to fiduciary obligations, whether an express, technical, or statutory trust existed.  In re Honkanen, 446 B.R. at 380.  Based on the requirements set forth in Cal-Micro, Inc. v. Cantrell (In re Cantrell), 329 F.3d 1119, 1125 (9th Cir. 2003), the BAP held that a California real estate licensee does not meet the fiduciary capacity requirement of § 523(a)(4) solely based on his or her status as a real estate licensee. In re Honkanen, 446 B.R. at 381.  "General fiduciary obligations are not sufficient to fulfill the fiduciary capacity requirement in the absence of a statutory, express, or technical trust." Id.

The Superior Court found Sergio was a licensed real estate agent who violated Cal. Civ. Code § 2945,  but this finding alone is not sufficient in the absence of a statutory, express, or technical trust.  Such finding is not necessary here given that the

entirety of the economic and emotional distress damages was awarded under the fraud claims and are not dischargeable under § 523(a)(2)(A).

Summary judgment is denied as to § 523(a)(4).

*Damages amount*

As to both R. Saucedo and M. Saucedo, the Superior Court identified that $45,000 in "economic damages" were awarded to each on the fraud claim. M. Saucedo RJN ISO MSJ, Ex. 2, 7:17-18; 8:74-6; R. Saucedo RJN ISO MSJ, Ex. 2, 7:27-28; 8:16-17. The Court also found that the value of Plaintiffs' emotional distress damage was $50,000 each. M. Saucedo RJN ISO MSJ, Ex. 2, 7:18-20; R. Saucedo RJN ISO MSJ, Ex. 2, 8:1-3. In order to include the emotional distress damages, it must be clear from the state court record that these damages relate to one of the non-dischargeable causes of action. Here, the Superior Court analyzed the findings supporting the emotional distress damages award under the "Fraud" heading and explained how each Plaintiffs' emotional distress was directly related to the fraud. Those damages, $95,000 total for each Plaintiff, are not dischargeable under § 523(a)(2)(A), for the reasons explained above.

Plaintiffs include in their damages the award of attorney's fees under Cal. Civ. Code § 2945.6. Civil Code 2945.6 provides: "An owner may bring an action against a foreclosure consultant for [a violation of Civil Code 2945.4]. Judgment shall be entered for actual damages, reasonable attorneys' fees and costs, and appropriate equitable relief."

The Superior Court awarded attorney's fees under Civil Code 2945.6 to M. Saucedo in the amount of $36,000, and costs of $1,127.17. M. Saucedo RJN ISO MSJ, Ex. 1, 2:13-14. R. Saucedo was awarded attorney's fees under Civil Code 2945.6 in the amount of $29,350, and costs of $910.17. R. Saucedo RJN ISO MSJ, Ex. 1, 2:12-14. In

discussing the damages suffered by both R. Saucedo and M. Saucedo, the Superior Court explained:

> Plaintiff also established that defendant violated several aspects of Section 2945, including collecting money before performing all services he agreed to perform; charging excessive fees; failing to fully disclose third party involvement in the services provided; and taking power of attorney from the homeowners.
>
> Plaintiff established that she paid $45,000 for these illegal services. Other than apparently assisting her to file a bankruptcy action, the true nature of which she did not understand, defendant did not establish that he performed anything of value for these payments. Therefore, plaintiff has established that she suffered economic damages of $45,000. **Of course, she cannot recover such economic damages twice. As they are already awarded under the claim for fraud, the court finds that plaintiffs total economic damages to be $45,000.**

M. Saucedo RJN ISO MSJ, Ex. 2, 8:1-7; R. Saucedo RJN ISO MSJ, Ex. 2, 8:12-18 (emphasis added).

The attorney fee awards were awarded to Plaintiffs was for a statutory violation that does not require a showing of fraud. Nor does the statutory scheme of Cal. Civ. Code § 2945 require a finding of a trust *res* that would be required for a judgment for fraud or defalcation while acting in a fiduciary capacity under § 523(a)(4). Because the attorney's fee awards are not related to nondischargeable damages for fraud, those portions of the Judgment Debts would be dischargeable in a hypothetical case against Sergio.

### Maria's Discharge Will Not Bar Collection against Community Property

Once a debt has been determined to be a community debt pursuant to state law, the second issue is the scope of the debtor spouse's discharge. This question is governed by bankruptcy law.

A debt may be excepted from discharge when (1) the debtor personally commits actual, positive fraud, or (2) the actual fraud of another is imputed to the debtor under partnership/agency principles. In re Tsurukawa, 287 B.R. 515, 525 (B.A.P. 9th Cir. 2002)("Tsurukawa II"). Here, there is no mention of Maria's involvement in the fraud scheme and no indication she was a partner of Sergio in any way other than married to him. So Tsurukawa reasoning does not apply. Plaintiffs do not argue that Maria was involved in Sergio's fraud. Plaintiff concedes Maria is an "innocent spouse." Plaintiff's Supplemental Brief in Reply, ad. ECF doc. 2:25.

The "innocent spouse" defense, however, applies only to the innocent spouse's post-petition sole and separate property, not to the community property. Arcadia Farms Ltd. v. Rollinson (In re Rollinson), 322 B.R. 879, 881–82 (Bankr. D. Ariz. 2005). Maria's discharge will not be a bar to collection of this community debt from her after-acquired community property as it is not dischargeable in a hypothetical case filed by Sergio on the same petition date.

**Implications for Maria's Confirmed Chapter 11 Plan**

Normally, the discharge causes community property acquired post-petition to be free from pre-petition community claims. 11 U.S.C. § 524(a)(3). But, if ... the community debt is excepted from discharge under § 523 ..., the discharge does not immunize such post-petition community property from the community debt. This happens automatically by operation of Code §§ 524(a)(3) and (b), without the necessity for any determination as to the knowledge or participation of the "innocent" spouse, so long as the debt is community debt. In part, this is because the entry of a non-dischargeability order does not transform a community debt into a separate obligation owed by only the wrongdoing spouse. In re Rollinson, 322 B.R. 789 at 883 (citations omitted).

As explained above, Plaintiff may collect against all community property, whether acquired before or after Maria's bankruptcy. Plaintiff may not collect against Maria's sole and separate property.

Debtor's request to bar collection until after repayment under the plan is completed is too vague and no authority is provided to support such request. Is Debtor distributing community or separate property assets? The Chapter 11 is closed so no ruling can be made as to the Chapter 11 plan as part of these adversaries. The Chapter 11 Plan appears to be distributing community assets and debtor should have addressed this issue in her plan. She ignored it and will have to address it appropriately in the Chapter 11 case.

Preference argument

In the Oppositions that were initially filed in response to these motions, Defendant argued that because she is the "Debtor in Possession," with the power of a trustee in a Chapter 11, she can file a motion to have the Judgments against Sergio declared a "preference." <u>M. Saucedo Opposition</u>, 4:20-26, Oct. 20, 2022; <u>R. Saucedo Opposition</u>, 4:20-26, Oct. 20, 2022. Debtor provided no statutory or case authority to support this assertion, and it was not clear what she meant by it. Debtor has since substituted in different counsel who filed a supplement brief on December 14, 2022, wherein this argument is seemingly abandoned. So the Court will not address it here.

//
//
//
//
//
//
//

-17-

**CONCLUSION**

The Court, applying the principals of issue preclusion to the Superior Court Judgments, finds that the Judgment Debts would be nondischargeable under 11 U.S.C. §523(a)(2)(A) against Sergio, in a hypothetical case filed on the same date as this bankruptcy case. There is no genuine dispute as to any material fact and R. Saucedo and M. Saucedo are entitled to judgment as a matter of law under FRCP 56 that the community property discharge in Maria's chapter 11 case does not apply under the exception of § 524(b)(2).

###

Date: January 25, 2023

*Maureen A. Tighe*
Maureen A. Tighe
United States Bankruptcy Judge